## No. 14.

### G. W. WARREN vs. W. D. McDONALD.

| 32 987|
|e112 289|

Appeals in contested election cases are still returnable as provided for in Sections 40 and 1434 of the Revised Statutes of 1870, which do not conflict with Act No. 45 of 1870. C. C. Duson vs. C. M. Thompson, 32 An. 861. affirmed.

Act No. 44 of 1877 is the only law of the State, under which juries are now drawn, and it is for the Jury Commissioners, appointed under its provisions, to draw the juries by which contested election cases are tried.

The general venire box being destroyed, it was legal for the Jury Commissioners to draw a jury of talesmen for the trial of this case.

The ballot-boxes having been destroyed, verbal evidence was properly admitted to show the number of votes cast for Plaintiff and the number cast for Defendant.

A PPEAL from the Eighteenth Judicial District Court, parish of Webster. *Turner, J.*

T. M. Fort and John Young for Plaintiff and Appellant.

" The law does not require a vain or impossible thing." 22 A. 33.

" When the letter of the law leads to an absurd conclusion, the judge is bound to recede from it until he arrives at a reasonable conclusion." 16 L. 268.

Sec. 7 of Act 45, Ex. Ses. 1870, applies to cases arising under the writs of mandamus and quo warranto, and the act to prevent intrusion into office, and not to contested election cases. 12 A. 825, 13 A. 175, 21 A. 289.

" The order of appeal is the act of the judge, and a mistake of a return day made by him can not be visited upon the appellant." 31 A. 596.

The plurality of votes legally cast elects the candidate. The legal returns are the best evidence of the vote cast, but when lost or destroyed, or not made out, the evidence of those who held the election and those who witnessed or assisted in the count is good evidence to establish the result of the election.

C. E. McDonald and J. D. Watkins for Defendant and Appellee.

The opinion of the Court was delivered by

POCHE, J.    This is a contested election case, growing out of the general election held in this State on the second of December, 1879, at which plaintiff and defendant were competing candidates for the office of Clerk of the District Court of Webster parish.

From a verdict and judgment rendered against him, decreeing that there had been no legal election for that office and ordering a new election, plaintiff has taken a suspensive appeal, which defendant moves to dismiss, on the ground that as this case involves the right to office, the appeal should have been made returnable in ten days after the rendition of the judgment, which was signed on January 7th of the present year. That the provisions of Section 7 of Act No. 45, of 1870, requiring that all appeals in cases involving the right to office be made returnable in ten days after judgment, do not apply to, or govern, contested election cases, in which appeals are to be regulated as in all other civil cases, is no longer an open question in our jurisprudence. The distinction between the two classes of cases was clearly drawn in the two leading cases of 12 A. 825 and 13 A. 175 ; it was subsequently re-affirmed by the late Court in the case of the State ex rel. Young vs. the Judge of the District Court of the parish of Concordia, decided in 1879, and not reported ; and it was finally adjudicated upon by ourselves in the case of C. C. Duson vs. C. M. Thompson, recently decided at Opelousas, and not yet reported.

In a contested election case, the right to office is not necessarily or exclusively involved, because the investigation is directed to the legality or illegality of the election, and may result in recognizing neither of the contestants as entitled to the office, and in ordering a new election, as illustrated by the verdict of the jury in this very case.

The motion to dismiss is therefore overruled

---

## ON THE MERITS.

Plaintiff alleges that he was elected Clerk of the District Court of Webster Parish, at the late general election, but that in compiling the vote of the parish the sheriff, as returning officer, returned but 635 votes in his favor, and 644 in favor of his opponent, when in truth and in fact he had received 736, and his opponent only 681 votes.    That in making his return the sheriff had not included the votes cast at precinct No. 2 of ward No. 3 of said parish, for the reason that the election returns, tally-sheets and ballot-box of said precinct had been violently taken away from the commissioners, by a body of disguised and armed men on the night of the election.

That plaintiff had received at that precinct 101 votes, and his opponent only 37 ; and that said vote being counted would result in his election

and in the defeat of his opponent; and he concludes by asking to be declared entitled to the office in contest.

For answer defendant admits that he was not elected to the office; but avers that, owing to many illegalities, irregularities, to fraud and violence which had been perpetrated and practiced on that day in Webster parish there had not been a free and fair election ; and concludes by praying for a new election. He has not favored us with a brief on the merits of this cause.

A special term of court was held and a special jury was drawn for the trial of the cause. But before proceeding with the trial, defendant excepted to the venire as drawn for said trial, on the following grounds :

First. That the jury commissioners had no authority in law to draw such a jury.

Second. That one of the commissioners was not notified of the time of the drawing, and was not present.

Third. That fifty good and lawful jurors had not been drawn.

Fourth. That the jurors were not drawn from the general venire box, and jurors drawn to try this cause at the last sitting of the court were drawn for the present term.

The record shows that a jury, previously drawn in this case, had been set aside by the court on an exception filed to the drawing by the defendant, and a new venire ordered, to which venire the above exception was interposed. After hearing evidence the District Judge overruled the exception, and we think that his ruling was correct. Act 44 of 1877 provides the only mode of drawing juries in this State, and, by its repealing clause, amends section 1426 of the Revised Statutes, in so far as that section imposed the duty of drawing juries in contested election cases on the clerk, the sheriff and the recorder of mortgages. Under the same act, any of the duties of jury commissioners can be performed by a majority of them. The evidence also shows that the fifty jurors were drawn as the law directs, and explains why the jury commissioners did not draw the jury from the general venire box, because that very box had been destroyed by a mob on the night after the election, for which reason the commissioners made a new venire as directed by section 1426 of the Revised Statutes. There was no force in the exception, and it was properly overruled.

The evidence shows that the election was very quiet and peaceable all over the parish, and that all voters, who so desired, had been allowed freely to cast their votes as they chose. No violence or threats of a serious character had been used to deter any voter from casting his vote as a freeman and an independent citizen. That at every precinct the votes had been fairly counted, and legal returns made thereon, with

64

the exception that in several precincts the commissioners had neglected or omitted to swear to their returns.

It appears from the record that at precinct No. 2, of the third ward of the parish, after the ballots had been counted, and the returns made and signed, and before the commissioners had time to deliver them to the proper authorities, a body of armed and disguised men took them in their possession and carried them away, and that they have never since been heard of.

Plaintiff then offered to prove, by the testimony of several witnesses, what number of votes had been cast at that precinct for his opponent and for himself.

Defendant objected to the introduction of this evidence, on the ground that the fact could only be proven, first, by the election returns, or the tally-sheets, or by the ballots, the loss of which had not been sufficiently accounted for nor advertised. His objection was properly overruled by the court.

We find in the record an admission of the defendant that the returns, tally-sheets and ballots of that precinct had been forcibly taken from the proper authorities, and that "plaintiff was without power to produce them, and that they were not under his control." This was manifestly sufficient to justify the introduction of secondary evidence of the facts sought to be established. The fundamental rule of law governing elections in this and other States of the Union, is that the ballots cast, when not impeded by fraud and violence, should decide the elections, and that when primary evidence of the number of ballots cast cannot be procured, the courts must open the doors to any legal evidence tending to show the result, so as to give effect to the will of the citizen expressed at the ballot box. (29 A. 610; Cooley, Constitutional Limitations, page 728.) The testimony of numerous witnesses, who saw the votes counted at that precinct, and the returns made, shows beyond a reasonable doubt that the ballots cast were as follows: 101 for Warren and 37 for McDonald.

Adding this vote to the sheriff's compilation, or return, forwarded to the Secretary of State, which showed 635 votes for Warren and 644 for McDonald, we have the following result: Warren, 736; McDonald, 681; or a majority of 55 for Warren.

In support of his allegations of fraud, illegal voting, violence and intimidation, defendant introduced several witnesses, whose testimony fails to convince us that the result of the election was in the slightest degree affected by such irregularities, or by a few angry words which passed between one of his supporters and two friends of his opponent.

It was shown that 37 persons voted on affidavits, and that one disqualified person, a convict, had also voted. Without passing upon

the legality of the act, in allowing persons, whose names are not on the poll book, to vote on their affidavit, and admitting that these 37 voters and the convict had all voted for plaintiff, and that these votes should have been rejected, it would yet leave him a majority of 17 votes.

We are, therefore, compelled to disagree with the jury in the conclusion which they reached in this case, for, under the evidence, we are satisfied that the election was fair and legal, and that plaintiff was duly elected to the office which he claims. But on the question of costs we cannot apply the effect of Act No. 59, approved April 5th, 1880, to this case, which was decided before the passage of the law, and under the authority of the decision in the case of Duson vs. Thompson, and the authorities therein quoted, we think that these costs must be borne by the parish of Webster.

It is therefore ordered, adjudged and decreed that the verdict of the jury be set aside, and that the judgment of the lower court be annulled, avoided and reversed; and it is further ordered and decreed that Gentry W. Warren was legally elected Clerk of the District Court of the parish of Webster, at the general election held in this State, on the 2d of December, 1879, and that the costs of this suit in both courts be paid by the parish of Webster.